# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID ROBERT BENTZ, #S-03210, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> NATHANIEL MAUE, ) <br> WILLIAM QUALLS, ) <br> ADAM TOPE, ) <br> JACOB GUETTERSLOH, ) <br> MICHAEL SCHNICKER, ) <br> RYAN SADLER, ) <br> TINA MONROE, ) <br> WESLEY MONROE, ) <br> TYLER JAIMET, ) <br> CAMBELL, ) <br> C/O BENIFIELD, ) <br> CONWAY, ) <br> DONALD LINDENBERG, ) <br> MICHAEL SAMUEL, ) <br> RAYMOND ALLEN, ) <br> KENT BROOKMAN, ) <br> MONJIE, ) <br> KRISTA ALLSUP, ) <br> MARK PHOENIX, ) <br> KIMBERLY BUTLER, ) <br> LASHBROOK, ) <br> DAVID DWIGHT, ) <br> LINDA CARTER, ) <br> J. FOSS, ) <br> JAMES BUTLER, ) <br> ANGILA CRAIN, ) <br> AMMIE LANG, ) <br> SUSAN KULIS, ) <br> S. McGLORN, ) <br> DR. NEWBOLD, ) <br> IDOC, ) <br> WEXFORD HEALTH SERVICES, ) <br> MENARD CORRECTIONAL CENTER, ) <br> ILLINOIS STATE POLICE ) <br> DEPARTMENTS and UNKNOWN PARTY, ) <br> ) <br> Defendants. ) | Case No. 16-00854-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Proceeding *pro se*, Plaintiff David Bentz filed this civil rights action pursuant to 42 U.S.C. § 1983 on July 27, 2016. (Doc. 1). Before screening the Complaint, the Court dismissed the action, after finding that Plaintiff failed to disclose financial information in his application for leave to proceed *in forma pauperis*. (Doc. 4). An Order Dismissing Case and Judgment were entered on September 22, 2016. (Docs. 8-9). Plaintiff appealed. (Doc. 22). On November 20, 2017, the Seventh Circuit reversed the District Court's decision and remanded the matter for further proceedings. *See Bentz v. Maue*, 702 F. App'x 461, 2017 WL 5564681 (7th Cir. Nov. 20, 2017). Consistent with the Seventh Circuit's Mandate (Doc. 34), the Clerk is **DIRECTED** to **VACATE** the Dismissal Order (Doc. 8), Judgment (Doc. 9), and Order Denying Leave to Proceed *in forma pauperis* (Doc. 5).

This matter is now before the Court for preliminary review of the Complaint. (Docs. 1, 1-1). In the 225-page document, Plaintiff names thirty-five known defendants, five unknown doctors and nurses, and numerous additional unknown medical and correctional staff at Menard. *Id*. His claims primarily arise from two assaults Plaintiff allegedly endured at the hands of Menard officials in May and August 2014 and the subsequent denial of medical care for his injuries. *Id*. Unfortunately, however, Plaintiff throws numerous additional claims into his Complaint as well. *Id*. He alleges that the defendants conspired to deprive him of his constitutional rights under the First, Eighth, and Fourteenth Amendments. (Doc. 1, p. 1). In addition, he asserts claims against them under Illinois state law for assault, battery, negligence, intentional infliction of emotional distress, and slander. *Id*. Plaintiff seeks declaratory judgment, monetary damages, and injunctive relief. (Doc. 1-1, pp. 16-17).

This matter is before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

*Id*. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations in the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

As part of the screening order, the Court also will consider whether any parties or claims are improperly joined in this action. *See* FED. R. CIV. P. 18, 20-21; *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). If the Court finds that they are, it is authorized to sever unrelated claims against different defendants into separate lawsuits, assign new cases numbers for each suit, and assess a separate filing fee for each new case. *George*, 507 F.3d at 607.

## The Complaint

**A.     First Assault**

According to the Complaint, Plaintiff was assaulted at Menard on May 11, 2014. (Doc. 1, p. 5). On that date, Officer Maue repeatedly threatened to slap Plaintiff in the face as he walked to and from the chow hall. *Id*. Officers Qualls, Schnicker, T. Monroe, W. Monroe, Tope, and Guettersloh stood by doing nothing. *Id*. Plaintiff asked Lieutenant Brookman to intervene, but the lieutenant told Plaintiff to "[k]eep moving [because] I don't care." *Id*.

As Plaintiff walked toward his cell, Qualls and Maue ordered him to return to the Six Gallery Flag, where Qualls, Tope, Guettersloh, and "Doe" grabbed Plaintiff and began punching him repeatedly in the back of the head and neck. (Doc. 1, p. 6). They slammed his face into the wall, while Maue said, "I am going to kill you!" (Doc. 1, pp. 6-7). Maue grabbed Plaintiff by the back of his shirt and twisted it tightly around his neck, choking and strangling him in the process. *Id*. He pushed and dragged Plaintiff across the floor, while calling him a "pencil pusher." (Doc. 1, pp. 5-6). Plaintiff eventually lost consciousness. (Doc. 1, p. 7). The assault occurred in view of Sadler, Schnicker, T. Monroe, W. Monroe, and "other Does," but they did not intervene. (Doc. 1, p. 6). Plaintiff allegedly did nothing to provoke the assault. *Id*.

Afterwards, Plaintiff repeatedly requested medical care for injuries to his jaw and neck between May 11 and 29, 2014. (Doc. 1, pp. 7, 13). His requests were consistently ignored or denied by Maue, Qualls, Tope, Guettersloh, T. Monroe, W. Monroe, Schnicker, Sadler, Jaimet, Cambell, Benifield, Samuel, Allen, Brookman, Allsup, Monjie, Trost, J. Butler, Dwight, Nurse Jane Doe, and other unidentified medical and correctional staff. (Doc. 1, p. 7).

When he pressed for an investigation and medical treatment, prison officials harassed and threatened Plaintiff. (Doc. 1, p. 7). He sent an emergency grievance to Warden Kimberly Butler

and Monjie, as well as a request for medical treatment directly to the Health Care Unit ("HCU"). *Id*. He repeatedly asked Brookman to speak with internal affairs and to bring him to the HCU for treatment, all to no avail. *Id*. Brookman eventually told Plaintiff that his grievances were "filed" in the trash can. *Id*. W. Monroe threatened to "beat his ass" if Plaintiff reported the incident, as Sadler stood by and did nothing. *Id*. Lieutenant Samuel threatened to issue Plaintiff a disciplinary ticket for repeatedly asking to speak with internal affairs and to visit the HCU. (Doc. 1, p. 8). Lieutenant Allen agreed to take Plaintiff to the HCU on condition that he not "make a case about it," but refused to contact internal affairs on Plaintiff's behalf. (Doc. 1, p. 9). Allen then worked with Jaimet to arrange a visit to the HCU, where Nurse Jane Doe allegedly denied Plaintiff treatment and pain medication for his injuries. *Id*.

On May 16, 2014, Plaintiff filed a lawsuit to address the first assault and related denial of medical care in *Bentz v. Qualls*, 14-cv-562-MJR-SCW (S.D. Ill.). He asserted claims under the First, Eighth, and Fourteenth Amendments against Qualls, Samuel, Brookman, Maue, Schnicker, Sadler, Butler, Allen, T. Monroe, W. Monroe, Tope, Guettersloh, J. Butler, and several unknown Menard officials. (Doc. 1, p. 6). Plaintiff named all of these defendants in this case as well.

Plaintiff then called his two family members on May 18 and 25, 2014, and asked them to contact Warden Kimberly Butler and the Illinois Department of Corrections ("IDOC") to complain about the failure to investigate the matter or treat Plaintiff. (Doc. 1, pp. 11-12). As a result of their efforts, Allsup met with Plaintiff on May 19, 2014, but took no action to help him. (Doc. 1, p. 11). Dwight reviewed an emergency grievance from Plaintiff, but declared it a non-emergency on May 22, 2014. *Id*. Monjie met with Plaintiff on May 27, 2014, but also took no action. (Doc. 1, p. 12).

Meanwhile, Qualls continued harassing and threatening Plaintiff, telling him on one

5

occasion, on May 24, 2017, to "put your eyeballs back in your head." (Doc. 1, p. 12). Cambell and Jaimet told Plaintiff that staff was going to "fuck [him] up" for talking to internal affairs. (Doc. 1, p. 13). They also denied Plaintiff and his cellmate a meal and then encouraged his cellmate to attack him, all in retaliation for speaking with internal affairs. *Id*.

The day after the defendants were served with the lawsuit in *Bentz v. Qualls*, No. 14-cv-562 (S.D. Ill.), Plaintiff was moved from the general population in the North 1 Cell House into the North 2 Cell House. (Doc. 1, pp. 13-14). The North 2 Cell House consists of segregation cells that are used to isolate inmates from the general population. (Doc. 1, p. 13). Plaintiff claims that he was transferred to dodge any injunctive relief he requested in *Bentz v. Qualles* or in retaliation for filing that case. (Doc. 1, p. 14).

**B.     Second Assault**

In connection with his pending suit in *Bentz v. Qualles*, Angela Crain arranged an examination of Plaintiff's suspected jaw and neck injuries in the HCU on or around August 22, 2014. (Doc. 1, p. 14). Plaintiff met with "Nurse Misty"[1] the following day. (Doc. 1, p. 15). The nurse noted swelling in Plaintiff's neck and jaw and issued him a package of ibuprofen and Tylenol. *Id*. She also referred him to Doctor Trost. *Id*.

While waiting for his appointment with the doctor on August 29, 2014, Plaintiff was assaulted in the HCU. (Doc. 1, p. 15). This time, Officers Lindenberg and Virgil Smith were allegedly responsible for the assault. *Id*. Plaintiff offers no details about it. *Id*.

Plaintiff filed a civil rights action to address the second assault on February 5, 2015.

---

[1] This individual is not named as a defendant in the Complaint, and Plaintiff asserts no claims against her. All potential claims against "Nurse Misty" are therefore considered dismissed without prejudice from this action. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

*Bentz v. Lindenberg*, 15-cv-121-NJR-DGW (S.D. Ill. Feb. 5, 2015). The defendants named in that action include Donald Lindenberg, Virgil Smith, Jacqueline Lashbrook, Linda Carter, Michael Monjie, Sherry Benton, Terri Anderson, Salvadore Godinez, Doctor Trost, and various unknown correctional officers. Plaintiff named some of the same defendants in this case as well, including Donald Lindenberg, Jacqueline Lashbrook, Linda Carter, Michael Monjie, and Doctor Trost.

C.  **Subsequent Denial of Medical Care**

Plaintiff did not meet with Doctor Trost on the day of his second assault. (Doc. 1, p. 15). His call passes to see the doctor were subsequently cancelled on September 5, 12, 19, and 26, 2014. *Id*. After speaking with Warden Lashbrook on September 26, 2014, Plaintiff sent her an emergency grievance on October 2, 2014. (Doc. 1, pp. 15-16). Lashbrook took no action in response to it. (Doc. 1, p. 17). Warden Butler did, however, expedite the grievance. *Id*.

Plaintiff finally met with Doctor Trost about the injuries he sustained in the initial assault on October 3, 2014. (Doc. 1, p. 15). On that date, Plaintiff complained of a suspected fractured jaw, chronic neck and shoulder pain, and vision problems. (Doc. 1, p. 16). Without examining him, Doctor Trost issued Plaintiff a three month prescription for ibuprofen, ordered x-rays, and scheduled a two week follow-up appointment. *Id*. As ordered, Plaintiff received x-rays on October 10, 2014, but Doctor Trost did not meet with him to discuss the results. *Id*. An outside medical provider named Doctor Foss allegedly reviewed the x-rays on October 13, 2014, and sent the results to Menard, where Doctor John Doe also reviewed them on October 22, 2014. (Doc. 1, p. 17).

In the meantime, Linda Carter contacted the HCU and Internal Affairs Officer John Doe about the matter on October 10, 2014. (Doc. 1, p. 17). Without any results in hand, HCU Nurse

Jane Doe reported no significant findings on the x-rays. *Id*. Concluding that no further treatment was necessary, a decision was made to deny the grievance Plaintiff filed seeking medical treatment. *Id.* Warden Butler concurred with the decision on October 23, 2014. *Id*.

D.    **Denial of Other Dental and Medical Care**

Plaintiff complains of the subsequent denial of other medical and dental care at Menard beginning in May 2015. (Doc. 1, pp. 18-20; Doc. 1-1, pp. 1-16). Doctor Newbold, a dentist at the prison, allegedly ignored "obvious swelling" and pain in Plaintiff's neck at an appointment on May 29, 2015. (Doc. 1, p. 18). Plaintiff received new dental x-rays on June 2, 2015. *Id*.

Doctor Chadwell[2] failed to perform Plaintiff's physical as scheduled on June 2, 2015. (Doc. 1, pp. 18-19). Subsequent call passes for the physical were cancelled on June 12, June 16, June 27, July 16, July 23, and August 18, 2015. *Id*.

On August 31, 2015, McGlorn and Nurse Jane Doe met with Plaintiff. (Doc. 1, pp. 19-20). At the appointment, Plaintiff addressed miscellaneous complaints, including his denial of a physical and dental care. *Id*. He also complained of problems with an ingrown toenail, his vision, neck pain, and jaw pain. *Id*. However, Plaintiff alleges that nothing was done. *Id*. Plaintiff submitted a request for treatment of a spider bite, ingrown hair, dental care, and neck pain on September 24, 2015. (Doc. 1-1, p. 1). Nurse Jane Doe met with Plaintiff to address his spider bite, and nothing else, the following day. *Id*. Plaintiff's doctor call pass was cancelled on October 26, 2015. (Doc. 1-1, p. 2).

On December 20, 2015, Nurse Jane Doe saw Plaintiff for a second spider bite or ingrown hair. (Doc. 1-1, p. 3). Doctor Trost examined the spider bite on January 21, 2016. (Doc. 1-1, p. 5). At the appointment, the doctor also prescribed naproxen twice daily for pain, ordered a

---

[2] Doctor Chadwell is not named as a defendant in this action. All claims against this individual are considered dismissed without prejudice. *Myles*, 416 F.3d at 551-52.

second x-ray of his spine, and recommended a follow up in four months. *Id*. Although Plaintiff received a second set of x-rays on January 25, 2016, and naproxen from January through April 21, 2016, he did not attend a follow up appointment with Doctor Trost to discuss the x-rays of his spine. (Doc. 1-1, pp. 6, 9). However, on February 18, 2016, Plaintiff met with Doctor Trost about his spider bite and complained of ongoing neck pain, prompting the doctor to increase his naproxen from 575 mg to 800 mg. (Doc. 1-1, p. 6). Plaintiff actually received 750 mg tablets, instead of 800 mg tablets. *Id*. He complained of the error in his dosage to Nurse Jane Doe during her rounds on February 23, 2016. *Id*. She agreed to issue him new tablets in the correct dosage but failed to do so. *Id*. Despite this, Plaintiff received regular refills of naproxen between February and May 2016. *Id*.

On March 16, 2016, Plaintiff asked Officer Cross[3] to take him to the HCU for treatment of neck pain and swelling, pressure in his head, right leg pain, and difficulty eating. (Doc. 1-1, p. 6). Cross declined to do so unless Plaintiff was "dying or dead," instead instructing Plaintiff to put in a sick call slip. (Doc. 1-1, p. 7). Plaintiff gave Officer Cross two sick call slips. *Id*. Although Cross gave at least one of them to Nurse Susan Kulis, she refused to see Plaintiff. *Id*. Plaintiff submitted a third slip and was finally called to the HCU on March 19, 2016. *Id*. Without reviewing his medical records, Nurse Kulis told Plaintiff that his cervical spine issues were not serious. *Id*. She nevertheless agreed to refer Plaintiff to a doctor, if he paid an additional $5.00 copay. *Id*.

Plaintiff was again seen by Nurse Jane Doe on April 19 and 20, 2016. (Doc. 1-1, p. 8). He filed a grievance to complain about the "above issues" and about being charged "double co-pays" on April 30, 2016. *Id*.

---

[3] Officer Cross is not named as a defendant in this action, and thus all claims against this individual are considered dismissed without prejudice.

9

On June 9, 2016, McGlorn met with Plaintiff and told him that he had arthritis. (Doc. 1-1, p. 8). For the first time, McGlorn increased Plaintiff's naproxen to 875 mg. *Id*. After Plaintiff filed a grievance on June 15, 2016, to complain about Nurse Jane Doe's failure to prescribe him the correct dosage of naproxen four months earlier, the nurse again prescribed him the wrong dosage (500 mg) on June 19, 2016. (Doc. 1-1, p. 19).

E.  **Subsequent Threats by Qualls, Maue, and Conway**

Plaintiff also complains of harassment and threats made by Qualls, Maue, and Conway in the years that followed his assaults. On August 1, 2015, Qualls threatened to "beat" Plaintiff. (Doc. 1, p. 19). He threatened to issue him a "bogus" disciplinary ticket on September 7, 2015. (Doc. 1, p. 20). Qualls also threatened to assault Plaintiff for naming him in a lawsuit on September 20, 2015. (Doc. 1-1, p. 1). He allegedly "harassed" Plaintiff on the way to the HCU on December 20, 2015. (Doc. 1-1, p. 3). He again harassed Plaintiff for filing grievances and suits on January 9, January 24, and March 6, 2016. (Doc. 1-1, pp. 4-6).

Maue threatened to kill Plaintiff for suing him on September 14, October 3, and December 3, 2015. (Doc. 1, p. 20; Doc. 1-1, pp. 2-3). Maue threatened to "kick his ass" for naming him in a suit on February 1, 2016. (Doc. 1-1, p. 6). He also threatened Plaintiff during line movement on May 24, 2016. (Doc. 1-1, p. 8).

On September 15, 2015, Conway gave Plaintiff "the bird" and said "fuck you bitch" "I'll fucking shoot you bitch," while waiving a gun from inside the prison tower. (Doc. 1, p. 20). He said the same thing to Plaintiff later that day in the chow hall, all because of the suits Plaintiff filed. *Id*. He also threatened to issue Plaintiff a "bogus" disciplinary ticket. (Doc. 1-1, p. 1). Conway did the same thing on November 3 and 4, 2015. (Doc. 1-1, p. 2). He "continued to harass" Plaintiff on November 23, 2015, and as he walked from the HCU to the shower on

December 23, 2015. (Doc. 1-1, p. 3). He also harassed Plaintiff at the commissary on January 6, 7 and 9, 2016. (Doc. 1-1, p. 4). Conway threatened Plaintiff in the chow hall on January 22, 2016. (Doc. 1-1, p. 5).

Plaintiff filed grievances to complain about the harassment and threats made by Qualls, Maue, and Conway with Officer Phoenix on September 15, 2015, November 3, 2015, and January 22, 2016, but he received no response. (Doc. 1-1, pp. 1-2, 5-6). Plaintiff named Qualls and Conway as additional defendants in *Bentz v. Qualles* in January and February 2016. (Doc. 1-1, p. 4). On January 22, 2016, Conway threatened Plaintiff in the chow hall for naming him in that lawsuit. (Doc. 1-1, pp. 5-6). On June 16 and 30, 2016, Plaintiff filed two complaints about Maue and Qualls with the Illinois State Police Investigation Unit, but no investigation was conducted. (Doc. 1-1, p. 9).

## Discussion

Based on the allegations, the Court finds it convenient to divide the *pro se* Complaint into the following enumerated claims. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merits.

**Count 1 -** Civil conspiracy claim against Maue, Qualls, Tope, Guettersloh, "Doe," Sadler, Schnicker, T. Monroe, W. Monroe, and Brookman for their group participation in the first assault on May 11, 2014, and their subsequent attempt to cover it up ("Count 1," Case No. 14-562).

**Count 2 -** First Amendment retaliation claim against Maue for assaulting Plaintiff on May 11, 2014, in response to his decision to file several lawsuits against prison officials ("Count 2," Case No. 14-562).

**Count 3 -** Eighth Amendment excessive force claim against Maue, Qualls, Tope, Guettersloh, and "Doe" for assaulting Plaintiff on May 11, 2014 ("Count 3," Case No. 14-562).

**Count 4 -** Eighth Amendment failure to protect claim against Sadler, Schnicker, T. Monroe, W. Monroe, and Brookman for failing to intervene to stop the assault of Plaintiff on May 11, 2014 ("Count 4," Case No. 14-562).

**Count 5 -** State tort assault and battery claim against Maue, Qualls, Tope, Guettersloh, and "Doe" for the assault that occurred on May 11, 2014 ("Count 5," Case No. 14-562).

**Count 6 -** Eighth Amendment deliberate indifference to medical needs claim against Maue, Qualls, Tope, Guettersloh, "Doe," Sadler, Schnicker, T. Monroe, W. Monroe, Brookman, Nurse Jane Doe, Jaimet, Cambell, Benifield, Samuel, Allen, Allsup, Monjie, J. Butler, K. Butler, Dwight, Crain, and Dr. Trost for failing to assist Plaintiff in obtaining medical treatment in 2014 following the assault that occurred on May 11, 2014 ("Count 6," Case No. 14-562).

**Count 7 -** State law negligence claim against all non-medical provider defendants for the conduct described in Count 6 ("Count 7," Case No. 14-562).

**Count 8 -** State law negligence claim against Nurse Jane Doe for the conduct described in Count 6 ("Count 8," Case No. 14-562).

**Count 9 -** State law claims for intentional infliction of emotional distress and slander.

**Count 10 -** First Amendment retaliation claim and/or Eighth Amendment cruel and unusual punishment claim against Qualls, Conway, Maue, W. Monroe, Samuel, Allen, Cambell, and Jaimet for harassing and threatening Plaintiff in 2014, 2015, and 2016 for filing grievances and suits.

**Count 11 -** Fourteenth Amendment due process claim against Phoenix for ignoring Plaintiff's grievances regarding ongoing harassment and threats by Qualls, Conway, and Maue.

**Count 12 -** Fourteenth Amendment due process claim against Brookman, Allsup, Dwight, and Monjie, who disregarded Plaintiff's grievances regarding the 2014 assaults, request for an investigation, and request for medical care.

**Count 13 -** Eighth Amendment excessive force claim against Lindenberg for assaulting Plaintiff on August 29, 2014 ("Count 2," Case No. 15-121).

**Count 14 -** Illinois assault and/or battery claim against Lindenberg for his conduct on August 29, 2014 ("Count 5," Case No. 15-121).

**Count 15 -** Eighth Amendment deliberate indifference to medical needs claim against Newbold for ignoring "obvious swelling" and pain in Plaintiff's neck at a dental appointment on May 29, 2015.

**Count 16 -** Eighth Amendment deliberate indifference to medical needs claim against Nurse Jane Doe and McGlorn for failing to address Plaintiff's complaints about an ingrown toenail, vision problems, neck pain, and jaw pain at appointments in August 2015, April 2016, and June 2016.

**Count 17 -** Eighth Amendment deliberate indifference to medical needs claim against Doctor Trost for failing to provide Plaintiff with adequate medical treatment for neck pain in 2016 when the doctor ordered x-rays of his spine but failed to review the results of the x-rays with Plaintiff and when the doctor ordered naproxen but failed to ensure that he received the correct dosage.

**Count 18 -** Eighth Amendment deliberate indifference to medical needs claim against Kulis for denying Plaintiff adequate medical care for his neck pain and swelling, pressure in his head, right leg pain, and difficulty eating in March 2016.

**Any claims mentioned in the Complaint but not identified above are inadequately pled under the *Twombly* pleading standard or are improperly joined and are considered dismissed without prejudice from this action. Any defendants listed in the Complaint but not named in connection with one of the above claims are also considered dismissed without prejudice for failure to state a claim against the defendant(s). Finally, to the extent Plaintiff sought to bring claims against individuals or entities not included in the case caption, these individuals or entities will not be treated as defendants in this case, and any claims against them should be considered dismissed without prejudice.** *See Myles v. United States***, 416 F.3d at 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption").**

This is the type of omnibus Complaint that the Seventh Circuit Court of Appeals had in mind when it warned district courts to sever or dismiss improperly joined claims and/or parties.

In *George*, the Seventh Circuit explained that severance "not only . . . prevent[s] the sort of morass" produced by multi-claim, multi-defendant suits "but also . . . ensure[s] that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). The Seventh Circuit strongly encourages district courts to use severance when faced with an omnibus or scattershot complaint, *Owens v. Evans*, -- F.3d --, 2017 WL 6728884, *1 (7th Cir. Dec. 28, 2017), and discourages courts from allowing a prisoner "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). *See also Wheeler v. Talbot*, 695 F. App'x 151, at *1 (7th Cir. 2017) (district court should have severed unrelated or improperly joined claims or dismissed one of them). Plaintiff attempts to do just that.

This scattershot approach is unacceptable under Rule 20(a)(2) of the Federal Rules of Civil Procedure and the Prison Litigation Reform Act. *See Owens v. Evans*, -- F.3d --, 2017 WL 6728884, *1 (7th Cir. Dec. 28, 2017) (citing 28 U.S.C. § 1915(b), (g); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George*, 507 F.3d at 607). It obscures the allegations against specific defendants. *Id*. Under the circumstances, the Court will exercise its discretion and sever unrelated claims against different defendants into separate cases. *George,* 507 F.3d at 607.

When considering how to sever the claims at issue, the Court is mindful of the fact that Plaintiff has merely combined the claims he already asserted in two prior suits into this single action and then expanded upon them. Counts 1 through 8 are the subject of a lawsuit that he filed more than two years before bringing this action on July 27, 2016. *See Bentz v. Qualles*, No. 14-cv-00562-MJR-SCW (S.D. Ill. filed May 16, 2014). In *Bentz v. Qualles*, Plaintiff named thirteen known and numerous unknown officials who were allegedly responsible for his assault on May

11, 2014, and his subsequent denial of medical care. *See id*. All of the defendants named in that action are also named in the Complaint in this case, including William Qualls, Michael Samuel, Kent Brookman, Nathaniel Maue, Michael Schnicker, Ryan Sadler, Kimberly Butler, Lieutenant Allen, T. Monroe, W. Monroe, Adam Tope, Jacob Guettersloh, Jeremy Butler, and various unknown correctional officers.[4] That suit was dismissed on exhaustion grounds on February 22, 2017. (Docs. 5, 104, 124, 165, 224). Plaintiff's appeal of the decision is currently pending. *Bentz v. Qualls*, App. No. 17-01728 (7th Cir. filed Apr. 7, 2017). Counts 1 through 8—and related Counts 9 through 12—shall remain together in this action.

Counts 13 and 14 are also the subject of a separate suit that Plaintiff filed in this District long before he filed the instant action. *See Bentz v. Lindenberg*, No. 15-cv-00121-NJR-DGW (S.D. Ill. filed Feb. 5, 2015). In *Bentz v. Lindenberg*, Plaintiff named nine other known defendants and various unknown defendants who were allegedly responsible for his second assault at the prison on August 29, 2014, and/or his related denial of medical care. *See id*. The defendants named in that action include Donald Lindenberg, Virgil Smith, Jacqueline Lashbrook, Linda Carter, Michael Monjie, Sherry Benton, Terri Anderson, Salvadore Godinez, Doctor Trost, and various unknown correctional officers. He reasserts his claims against Lindenberg in this action, even though *Bentz v. Lindenberg* remains pending.[5] Counts 13 and 14, which are unrelated to Counts 1 through 12, shall be severed into a new case, receive a new case number, and trigger an additional filing fee.

Plaintiff also brings several new Eighth Amendment claims against officials who

---

[4] Plaintiff does not spell the names of these individuals consistently in *Bentz v. Qualls*.
[5] The following defendants were dismissed without prejudice from the action in the threshold order: Kimberly Butler, Lashbrook, Carter, Benton, Anderson, and Godinez. (Doc. 8, p. 13). On summary judgment, the following claims were dismissed with prejudice: Count 1 against Lindbergh and Smith; Count 3 against Doctor Trost and John Doe #1; and Count 4 against Monjie. *Id*. (Doc. 144, March 27, 2017). All claims against Monjie have since been dismissed with prejudice. *Id*.

allegedly failed to provide him with adequate medical treatment for various ailments in 2015 and 2016. This includes Count 15 against Dentist Newbold and Counts 16 through 18 against Doe, McGlorn, Trost, and Kulis. Because the allegations offered in support of these two sets of claims do not arise from the same transaction or occurrence as the other claims and involve different defendants, the Court will sever them into two additional suits, assign a new case number to each newly-severed action, and assess an additional filing fee in each new case.

What remains in this action is Counts 1 through 12 against Nathaniel Maue, William Qualls, Adam Tope, Jacob Guettersloh, "Doe," Ryan Sadler, Michael Schnicker, Tina Monroe, Wesley Monroe, Kent Brookman, Nurse Jane Doe, Tyler Jaimet, Cambell, C/O Benifield, Michael Samuel, Raymond Allen, Krista Allsup, Monjie, James Butler, Kimberly Butler, David Dwight, Angila Crain, Conway, Mark Phoenix, and Doctor Trost. Counts 1 through 8 are currently the subject of an appeal in *Bentz v. Qualls*, App. No. 17-1728 (7th Cir.). It appears that Plaintiff may have brought this action to preserve these claims, and expand upon them, should he lose the appeal. Therefore, until the appeal is resolved, this Court will take no action on Counts 1 through 8 and related Counts 9 through 12. A separate order shall be issued in this case to review the merits of these claims, once the appeal is decided. Plaintiff shall be provided with a copy of the merits order as soon as it is entered. No service shall be ordered on any defendant at this time.

### **Pending Motions**

Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. 4) is **GRANTED**. A separate Order shall issue regarding the amount and deadline for the initial partial filing fee.

Plaintiff's Motion for Order and Status (Doc. 35) is **DENIED**. This Order reflects the current status of this matter.

16

In the Complaint, Plaintiff generally seeks injunctive relief. Because this request dates back to the filing of the Complaint in July 2016, the related request for injunctive relief may now be moot. In any event, Plaintiff must file a separate Motion for Preliminary Injunction pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, if he deems it necessary to do so in this or any other newly-severed case.

## Disposition

**IT IS HEREBY ORDERED** that the Order Dismissing Case (Doc. 8), Judgment (Doc. 9), and Order Denying Motion for Leave to Proceed *in forma pauperis* (Doc. 5) are **VACATED** pursuant to the Mandate (Doc. 34) of the Seventh Circuit Court of Appeals.

**IT IS ORDERED** that **COUNTS 13** through **18**, which are unrelated to **COUNTS 1** through **12**, are severed into three new cases, as follows:

**SEVERED CASE 1: COUNTS 13** and **14** are severed into a new case against Defendant **LINDENBERG** and shall be captioned: **DAVID ROBERT BENTZ, Plaintiff vs. DONALD LINDENBERG, Defendant.**

**SEVERED CASE 2: COUNT 15** is severed into a new case against Defendant **NEWBOLD** and shall be captioned: **DAVID ROBERT BENTZ, Plaintiff vs. DOCTOR NEWBOLD, Defendant.**

**SEVERED CASE 3: COUNTS 16, 17,** and **18** are severed into a new case against Defendants **McGLORN, TROST, KULIS,** and **NURSE JANE DOE** and shall be captioned: **DAVID ROBERT BENTZ, Plaintiff vs. S. McGLORN, DOCTOR TROST, SUSAN KULIS,** and **NURSE JANE DOE, Defendants.**

The claims in each newly-severed case shall be subject to a merits review pursuant to 28 U.S.C. § 1915A, after the new case number and judge assignment is made. In each new case in this Court, the Clerk is **DIRECTED** to file the following documents:

1) This Memorandum and Order;

2) Complaint (Doc. 1); and

3) Motion for Leave to Proceed *in forma pauperis* (Doc. 4).

Because Plaintiff has been granted IFP status in this case, he shall be granted IFP in each severed case. Plaintiff **will be responsible for an additional $350.00 filing fee** in each newly severed case. No service shall be ordered on the defendant in the severed case until the § 1915A review is completed.

Each case, including the instant case, is also subject to further severance, should the Court determine, as the case proceeds, that Plaintiff has improperly joined parties and/or claims.

**IT IS FURTHER ORDERED** that the *only claims remaining in this action are COUNTS 1 through 12 against Defendants Nathaniel Maue, William Qualls, Adam Tope, Jacob Guettersloh, "Doe," Ryan Sadler, Michael Schnicker, Tina Monroe, Wesley Monroe, Kent Brookman, Nurse Jane Doe, Tyler Jaimet, Cambell, C/O Benifield, Michael Samuel, Raymond Allen, Krista Allsup, Monjie, James Butler, Kimberly Butler, David Dwight, Angila Crain, Conway, Mark Phoenix, and Doctor Trost.* This case shall now be captioned: **DAVID ROBERT BENTZ, Plaintiff vs. NATHANIEL MAUE, WILLIAM QUALLS, ADAM TOPE, JACOB GUETTERSLOH, "DOE," RYAN SADLER, MICHAEL SCHNICKER, TINA MONROE, WESLEY MONROE, KENT BROOKMAN, NURSE JANE DOE, TYLER JAIMET, CAMBELL, C/O BENIFIELD, MICHAEL SAMUEL, RAYMOND ALLEN, KRISTA ALLSUP, MONJIE, JAMES BUTLER, KIMBERLY BUTLER, DAVID**

**DWIGHT, ANGILA CRAIN, CONWAY, MARK PHOENIX,** and **DOCTOR TROST, Defendants.**

**IT IS ORDERED** that this action is **STAYED** until the conclusion of the appeal in *Bentz v. Qualles*, App. No. 17-1728 (7th Cir.). Until that time, the Court will defer screening Counts 1 through 12 pursuant to 28 U.S.C. § 1915A. No service shall be ordered in this case until § 1915A review is completed.

**IT IS ORDERED** that Defendants **DONALD LINDENBERG, DOCTOR NEWBOLD, SUSAN KULIS, LINDA CARTER, J. FOSS, AMMIE LANG, ILLINOIS DEPARTMENT OF CORRECTIONS, WEXFORD HEALTH SOURCES, INC., MENARD CORRECTIONAL CENTER, ILLINOIS STATE POLICE DEPARTMENT,** and **UNKNOWN PARTIES** (except "Doe" and "Nurse Jane Doe") are **TERMINATED** as parties in *this* action.

The Clerk is **DIRECTED** to **ADD** as defendants the following two unknown parties in CM/ECF in this action: **DOE** and **NURSE JANE DOE**.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 4, 2018**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**