IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| ROBERT BENTZ,<br><br>        **Plaintiff,**<br><br>v.<br><br>NATHAN MAUE, WILLIAM QUALLS, ADAM TOPE, JACOB GUTTERSLOH, MICHAEL SCHNICKER, RYAN SADLER, TINA MONROE, WESLEY MONROE, TYLER JAIMET, KEITH BENEFIELD, BILLY CONWAY, MICHAEL SAMUEL, RAYMOND ALLEN, KENT BROOKMAN, MICHAEL MONJE, KRISTA ALLSUP, KIMBERLY BUTLER, JACQUELINE LASHBROOK, DAVID DWIGHT, JEREMY BUTLER, ANGELA CRAIN, DOE, and AARON CAMPBELL,<br><br>        **Defendants.** | Case No. 16-cv-854-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on motions for summary judgment filed by Jeremy Butler (Docs. 159, 160) [1] and Raymond Allen, Krista Allsup, Keith Benefield, Kent Brookman, Kimberly Butler, Aaron Campbell, Angela Crain, David Dwight, Jacob Guttersloh, Tyler Jaimet, Jacqueline Lashbrook, Nathan Maue, Michael Monje, Tina Monroe, Wesley Monroe, William Qualls, Ryan Sadler, Michael Samuel, Adam Tope, and

---

[1] The motion also included claims against Dr. John Trost. He was later dismissed from the case (*See* Doc. 206).

Michael Schnicker (Docs. 166, 167) ("IDOC Defendants").[2] Plaintiff Robert Bentz filed a

response (Docs. 204, 205), as well as a motion to strike Defendants' motions (Doc. 203).

Both sets of defendants filed reply briefs and responded to the motion to strike (Docs. 207,

208, and 211). The Court held an evidentiary hearing on June 17, 2020. At the hearing, the

Court denied the motion to strike (Doc. 203) and heard testimony from Bentz and

Lieutenant Kent Brookman.

## BACKGROUND

This case has a long and complicated procedural history. Bentz, an inmate of the

Illinois Department of Corrections ("IDOC") who was housed at Menard Correctional

Center ("Menard"), originally filed his Complaint on July 26, 2016, and it was dismissed

at screening. The Seventh Circuit Court of Appeals reversed the decision and remanded

the case, where it was screened, and separated into eighteen distinct claims (*See* Doc. 56,

pp. 2-3). Six claims (Counts 13 through 18), including Counts related to the failure to

provide Bentz with adequate medical treatment in 2015 and 2016 (Counts 15, 16-18), were

severed into separate cases (*Id.* at p. 2). The remaining claims in this case (Counts 1-12)

were duplicative of Bentz's 2014 case, *Bentz v. Qualles*, Case No. 14-cv-562-NJR-MAB

(S.D.Ill. filed Feb. 5, 2015) ("2014 case"), which had been dismissed on exhaustion

grounds in February 2017.

Bentz appealed the 2014 case, and the Court stayed this case until the appeal was

---

[2] Billy Conway has not filed a motion for summary judgment on the issue of exhaustion. The
IDOC Defendants acknowledge that Bentz filed a fully exhausted grievance dated January 24,
2016 that exhausted his retaliation claims against Conway (Doc. 167, pp. 11-12; 167-4, pp. 176-
177; 167-5).

concluded (*Id.*). On appeal, the defendants conceded that the district court failed to resolve a factual dispute as to whether Bentz's May 12, 2014 emergency grievance was discarded, and he was thus thwarted from exhausting his administrative remedies. *Bentz v. Qualls*, 748 F App'x 54 (7th Cir. 2019). The Seventh Circuit remanded the 2014 case with an instruction to "take whatever steps [the court] deems necessary to determine whether Bentz's first grievance was discarded." *Bentz*, 748 F App'x at 56. Bentz later voluntarily dismissed his 2014 case without the exhaustion issue ever being resolved.

Subsequent to the remand, the Court lifted the stay in this case and screened Counts 1 through 12. The following counts remain in the case:

Count 1: Civil conspiracy claim against Maue, Qualls, Tope, Guttersloh, Sadler, Schnicker, Tina Monroe, Wesley Monroe, and Brookman for their group participation in the first assault on May 11, 2014, and subsequent attempt to cover it up.

Count 2: First Amendment retaliation claim against Maue for assaulting Plaintiff on May 11, 2014, in response to his decision to file several lawsuits against prison officials.

Count 3: Eighth Amendment excessive force claim against Maue, Qualls, Tope, and Guttersloh for assaulting Plaintiff on May 11, 2014.

Count 4: Eighth Amendment failure to protect claim against Sadler, Schnicker, Tina Monroe, Wesley Monroe, and Brookman for failing to intervene to stop the assault of Plaintiff on May 11, 2014.

Count 5: State tort assault and battery claim against Maue, Qualls, Tope, and Guttersloh for the assault and battery that occurred on May 11, 2014.

Count 6: Eighth Amendment deliberate indifference to medical needs claim against Maue, Qualls, Tope, Guttersloh, Sadler, Schnicker, Tina Monroe, Wesley Monroe, Brookman, Jeremy

> Butler, Jaimet, Campbell, Benefield, Samuel, Allen Allsup, Monjie, Kimberly Butler, Dwight, Crain, and Lashbrook for failing to assist Plaintiff in obtaining medical treatment in 2014 following the assault on May 11, 2014.

Count 7:     State law negligence claim against all non-medical provider defendants for the conduct described in Count 6.

Count 10:    First Amendment retaliation claim and/or Eighth Amendment cruel and unusual punishment claim against Qualls, Conway, Maue, Wesley Monroe, Samuel, Allen, Campbell, and Jaimet for harassing and threatening Plaintiff in 2014, 2015, and 2016 for filing grievances and suits.

The assault which forms the basis of the bulk of Bentz's claims occurred on May 11, 2014. Relevant to the claims against Jeremy Butler, Butler notes that he was a registered nurse at Menard from October 2011 until December 2014. Defendants list a number of grievances in their motion, including grievances filed and/or exhausted after the filing of this lawsuit (Doc. 160, pp. 3-5; Doc. 167, pp. 4-5). The Court finds that it is not necessary to review all of these additional grievances because Bentz does not appear to argue that these grievances are relevant to his claims. He "objects" and "disputes" a number of material facts set forth by all of the defendants but never explains why he disputes these facts (Doc. 204, p. 2). Nor does he identify any of these grievances as relevant to his claims. Instead, he adopts his briefs from his 2014 case and his appeal, which focus on the grievances dated May 11, 2014 and May 16, 2014. Bentz alleges in the filings that the May 11 grievance was destroyed by Brookman, and he did not need to further grieve his claims because he was thwarted in the process. Brookman denies that he destroyed the grievance (Doc. 167-6). He also denies that he worked in Bentz's cellhouse and that he picked up mail and/or grievances from inmates (*Id.*).

The facts regarding the grievances Bentz argues exhausts his claims are set forth as follows:

**May 11, 2014 Grievance**:   Bentz alleges that he filed this grievance on May 12, 2014, but he never received a response (Doc. 204, p. 72). He was informed by Brookman on May 13, 2014 that the grievance had been thrown away (*Id.*). The grievance alleges that on May 11, 2014, he was assaulted by Officer Qualls and Officer Schnicker while on his way back to the cellhouse (Doc. 204, p. 15). Officer Maue also participated and other officers, including Sadler and other unknown officers, watched the assault (*Id.*). After the assault, he informed Samuels and asked for the assault to be reported and for medical care, but Samuels refused (*Id.* at pp. 15-16). He also informed Allen about the assault and he took him to the medical staff but did not contact internal affairs (*Id.* at p. 16).

**May 16, 2014 Grievance**:   This grievance was received by the grievance officer on May 21, 2014, and forwarded to the warden (Doc. 167-2, p. 19). The warden deemed the grievance a non-emergency and returned it to Bentz on May 22, 2014 (*Id.*). There is no further record of this grievance being filed through the normal grievance process or submitted to the ARB (Doc. 167-3, 167-4, and 167-5). Bentz's prior responses in his 2014 case alleged that he never received the response (Doc. 204, p. 78).

Jeremy Butler identifies one additional grievance, dated October 2, 2014, that was filed prior to Bentz's Complaint and discusses medical care that Bentz received.

**October 2, 2014 Grievance**: This grievance alleges that on August 29, 2014, Bentz

was assaulted by Correctional Officer Lindenberg and Correctional Officer Smith (Doc. 160-1, pp. 65-66). He requested medical care on numerous occasions following the assault and submitted a number of medical call passes which went unanswered. The grievance was fully exhausted (*Id.* at pp. 62-65). The grievance was the subject of another of Bentz's lawsuits, *Bentz v. McGlorn*, Case No. 18-cv-18-NJR.

Although Bentz argued at the evidentiary hearing that there were additional grievances regarding his medical care he failed to point to them either in his response or at the hearing. He testified that he did not have access to his materials for the hearing because of a lockdown and that Defendants did not provide all of his grievances in discovery. He also alleged that the grievance logs were illegible. While Bentz may not have had access to his grievance materials for the hearing, he clearly had access in responding to the original motions. Defendants produced over 550 pages of grievance records, including complete grievance and Administrative Review Board ("ARB") logs for the relevant time period (Docs. 167-1, 167-2, and 167-4). Those logs are legible. Bentz had enough records to identify any additional grievances he believed were relevant to the claims in this case. He chose instead to rely on his May 11, 2014 and May 16, 2014 grievances.

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467

(7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison

Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part,

that "no action shall be brought with respect to prison conditions under section 1983 of

this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted."

*Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's

exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that

"[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must

occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff

cannot file suit and then exhaust his administrative remedies while the suit is pending.

*Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the

place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286

F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a

prison's grievance process, "the prison administrative authority can refuse to hear the

case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the

defense of failure to exhaust administrative remedies" are not required to be decided by

a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir.

2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative

defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is
> therefore as follows: (1) The district judge conducts a hearing on exhaustion
> and permits whatever discovery relating to exhaustion he deems

appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

## A. Illinois Exhaustion Requirements

As an inmate confined within IDOC, Bentz was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq.* The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the

inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the response from the Chief Administrative Officer ("CAO"), he or she can file an appeal with the Director through the Administrative Review Board. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the ARB within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. At the time that Bentz filed his grievance, in 2014, the procedures allowed an inmate to

forward an emergency grievance directly to the CAO. 20 Ill. Admin. Code § 504.840(a)
(2014). If the CAO determines that "there is a substantial risk of imminent personal injury
or other serious or irreparable harm to the offender, the grievance shall be handled on an
emergency basis." 20 Ill. Admin. Code § 504.840(b)(2014). The CAO shall then expedite
the review of the grievance and inform the inmate as to what action shall be taken. 20 Ill.
Admin. Code §504.840(c)(2014).

ANALYSIS

## A.  IDOC Defendants

The only grievances which are relevant to the claims in this case are the May 11, 2014
and May 16, 2014 grievances.

Bentz testified at the hearing that he filed the May 11 grievance but was told on
May 13 by Lieutenant Brookman that the grievance was thrown in the trash along with
other documents. He testified that the entire gallery was present on a lunch line
movement and heard Brookman's statement. He pointed to an affidavit from another
inmate, John Anthony Reed (attached to his response), which also stated that Brookman
told Bentz during line movement to the chow hall that the grievance and a medical
request slip were filed in the trash can (Doc. 204, pp. 83-84).

Kent Brookman also testified at the evidentiary hearing. According to Brookman,
he was not working in the cellhouses at Menard in 2014. He was a member of the
adjustment committee and would not typically work in the cellhouses unless he was re-
assigned due to lack of staff. He does not recall if he was ever in Bentz's cellhouse in May
2014, but he did not work in the cellhouse five days a week during that time period. He

was also not involved in the grievance process and would not have known when a grievance was filed. Brookman also testified that grievances were picked up during the 3 to 11 shift, and he worked the 7 to 3 shift. He testified that he would not have thrown grievances away because it was a serious offense.

Simply put, the Court finds Brookman's testimony highly credible. Brookman testified that he had nearly 27 years in IDOC. He also did not work the shift when grievances were picked up, and he did not participate in the grievance process. Thus, he was unlikely to even know that Bentz filed a grievance, let alone have access to it in order to throw it away. The Court also finds Bentz's testimony lacking in credibility. As Defendants' pointed out, this Court previously determined that Bentz falsified and then lied about certificates of service in another of his cases, which undermines his credibility. *See Bentz v. McGlorn*, Case No. 18-cv-18-NJR (Doc. 207). The Court also finds it unlikely that Brookman, an officer with years of experience, would confess to the entire gallery in the chow line that he threw grievances away when he could face serious consequences if he interfered with the grievance process. Thus, the Court finds that Bentz did not submit his grievance on May 12, 2014 as he testified, nor was the grievance destroyed.

Instead, it appears Bentz submitted the May 11, 2014 grievance on May 16, 2014 where it was received by the warden. The grievance appears on the emergency grievance log and was received on May 21, 2014, deemed not an emergency, and returned to Bentz on May 22, 2014 (Doc. 167-2, p. 19). Defendants argue that Bentz failed to exhaust this grievance as well because he failed to appeal the grievance to the ARB. At the time Bentz filed his grievance, however, the Illinois Administrative Code "did not expressly address

what should happen if the warden concludes that the grievance does *not* present an emergency." *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 832 (7th Cir. 2020). The regulations in effect at the time "did not provide for an appeal of such an order." *Id.* There was no requirement or mechanism to appeal the warden's determination or to re-file the grievance through the normal course. *Id.* at 834-35. *See also Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005); *Bentz v. Ghosh*, 718 F App'x 413, 418 (7th Cir. 2017) ("Illinois rules do not require him to appeal [the warden's rejection of an emergency grievance] to the Administrative Review Board."); *Cobian v. McLaughlin*, 717 F App'x 605, 611 (7th Cir. 2017) ("When a warden has denied an Illinois prisoner's request to consider his grievance on an emergency basis, the prisoner has satisfied Illinois's rules for exhausting emergency grievances."). Recent Seventh Circuit precedent makes clear that Bentz exhausted his administrative remedies when the warden returned his May 16, 2014 emergency grievance.

Defendants also make much of the fact that Bentz filed his 2014 case before receiving a response to the May 16, 2014 grievance, but that argument lacks merit. Exhaustion is, indeed, a precondition to filing suit, but the warden responded to his May 16, 2014 grievance long before he filed this case on July 27, 2016 (Doc. 1). Thus, the Court finds that Bentz exhausted his May 16, 2014 grievance.

Bentz's May 16, 2014 grievance covers a number of claims in this case including: his civil conspiracy claim (Count 1), retaliation claim (Count 2), excessive force claim (Count 3), failure to protect claim (Count 4), assault and battery claim (Count 5), and negligence claim (Count 7). It also includes allegations related to his deliberate

indifference to medical claims in Count 6, at least as to the correctional officers.

The grievance does not, however, exhaust claims against Jeremy Butler. Although his grievance alleges that he asked a number of correctional staff for medical care following the assault, it does not allege that he had any issues with medical staff. In fact, his grievance alleges that correctional officers denied his request to see medical staff after the assault, but that Lieutenant Allen later got him medical staff/care at 8:45. The grievance fails to identify the medical staff he saw and the grievance does not state that he had any issue with the care he received. Nothing in the grievance would put the prison on notice that Bentz had an issue with Jeremy Butler. Thus, the May 16 grievance does not serve to exhaust the claims against him (Count 6).

The grievance also does not exhaust Bentz's claims in Count 10, which alleges that he was harassed and threatened in violation of the First and Eighth Amendments for filing grievances and lawsuits after the assault. Nothing in the grievance puts the prison on notice about these later threats which had not yet occurred. Only his January 24, 2016 grievance discussed retaliation and that was as to Billy Conway, who concedes the claim is exhausted against him and has not filed a summary judgment motion. Although Bentz argued at the hearing that there were a number of grievances filed before he filed this case, there are no exhausted grievances in the record that include allegations in this Count. Thus, Count 10 is **DISMISSED without prejudice** as to all of Defendants except Billy Conway who acknowledges that Bentz exhausted his claim against him (Doc. 167-4, pp. 176-77).

**B. Jeremy Butler**

As to Butler, he argues that the only grievance that could serve to address the claims against him is Bentz's October 2, 2014 grievance, because Butler left Menard in December 2014. As previously discussed, the May 16, 2014 grievance does not include *any* allegations against Butler. Although Bentz argued that he filed twenty to thirty grievances about his medical care throughout the years, the only grievance filed during the time period that Butler was at Menard is the October 2 grievance. The October 2, 2014 grievance was the subject of another one of Bentz's lawsuits before this Court, *Bentz v. McGlorn*, Case No. 18-cv-18-NJR. In that case, this Court adopted a Report and Recommendation from Magistrate Judge Daly that found that the October 2 grievance did not serve to exhaust against the medical defendants because it did not name or describe the actions of any medical staff; instead it complained about being denied medical call passes (Doc. 160, pp. 2, 12; Doc. 165). The Court adopts its previous findings in *McGlorn* relevant to the October 2 grievance. The October 2 grievance alleges that he was assaulted by Correctional Officer Lindenberg and Correctional Officer Smith on August 29, 2014 and that he was not provided with medical care and his call passes were not answered after the assault. The grievance does not name or describe any actions of Butler. The October 2 grievance also does not address the May 11, 2014 assault and does not mention any care provided by Butler after that assault. Accordingly, the claims against Jeremy Butler are also **DISMISSED without prejudice** for Bentz's failure to exhaust his administrative remedies.

CONCLUSION

For the reasons stated above, Jeremy Butler's motion for summary judgment (Docs. 159, 160) is **GRANTED**, and the claims against him are **DISMISSED without prejudice**. The IDOC Defendants' motion for summary judgment (Docs. 166, 167) is **GRANTED in part and DENIED in part**. All of the claims were exhausted by Bentz's May 16, 2014 grievance except for the claims in Count 10. Count 10 is **DISMISSED with prejudice** as to these defendants but will remain pending as to Billy Conway.

**IT IS SO ORDERED.**

**DATED:   June 24, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**